**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EUNICE MAGNUS, | |
| Plaintiff, | Case No. 10 C 380 |
| v. | Hon. Harry D. Leinenweber |
| ST. MARK UNITED METHODIST CHURCH, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment on the Plaintiff's sole remaining claim. For the reasons that follow, the Court grants Defendant's motion.

## I. STATEMENT OF FACTS

St. Mark United Methodist Church (hereinafter, "Church" or "Defendant") hired Plaintiff Eunice Magnus ("Magnus") for the first time as a secretary in 1997-98, and then again as a night and weekend receptionist when Church activities increased in 2006. Within a week of re-hiring her, Rev. Jon McCoy ("McCoy") learned that Magnus' daughter has certain mental disabilities. In February 2008, McCoy offered Magnus a full-time receptionist position with more responsibilities. In that role she worked only Monday – Friday. She was an at-will employee.

At the time, Magnus' daughter LaDonna lived in residential care facilities. Magnus evidently understood that she could only

take LaDonna home to visit on weekends. The parties disagree as to whether she could have made alternate arrangements. When Magnus worked nights and weekends in 2006, her son looked after LaDonna; he was no longer available to do so by mid-2008.

There was at least one other full-time receptionist, Nancy Branker ("Branker"), who worked every weekend. (The Church claims it could only afford the two; Magnus disagrees, noting that they tried to hire a part-time receptionist during her full-time tenure.) In mid-2008, Branker sought to adjust the schedule and have some weekends off. The parties dispute whether a weekend receptionist was necessary and whether Branker asked Magnus to work some weekends. It is undisputed, though, that McCoy and Julian Valentine ("Valentine"), a member of the Church Personnel Committee, asked Magnus to work some weekend days. Magnus repeatedly refused.

Defendant claims that it suggested several different rotating schedules. Magnus reports only being told that she must work weekends in addition to her regular schedule - which she contends is illegal under state and federal law. Defendant claims that Magnus' obligations to her daughter and her catering business led her to refuse; Magnus asserts that she has no such business and refused solely to care for LaDonna. She felt initially that her refusal jeopardized her job, but when it was not mentioned for several months, she thought things had blown over.

- 2 -

Defendant proffers a November 3, 2008 memorandum identifying several issues with Magnus' work performance.  Around that time, Branker had been on sick leave for several weeks, so Magnus worked alone.  McCoy discussed the memo with Magnus, and claims that this discussion was but one part of an ongoing conversation about her shortcomings.  Magnus contends that this is the only reprimand she ever received.  Magnus offers a list of people that she claims praised her during her tenure, including McCoy and several parishioners.

Magnus received a five percent raise in January 2009, she claims for "excellent job performance."  She reports being told that she would receive a raise within six months of working full-time, and that subsequent raises would be merit-based.  The January 2009 raise was the only one she received.  McCoy testified in deposition that all employees except new, part-time hires received a five percent cost-of-living raise, regardless of merit.

In late 2008 and early 2009, the Church's Employee Relations Committee evidently believed that the situation was deteriorating and that Magnus refused to make needed "adjustments."  Defendant claims that the Committee decided to fire her over the weekend of January 24, 2009.  It points to a Committee e-mail requesting a meeting on January 28, 2009 at 9:00 a.m. to discuss the "Magnus issue."  Defendant claims that the meeting was to discuss how to

best fire her. Magnus has no personal knowledge of who decided to fire her or when.

On January 27, 2009, LaDonna had a difficult episode, and Magnus arrived at work one hour late. She claims that she notified a co-worker of the delay. She says that once she arrived, she talked to McCoy and that he approved her offer to come in early the next day to make up the time. However, when she arrived at 12:00 Noon on January 28, 2009, she received a termination letter, which cited her "continued poor performance" as the reason for dismissal. Defendant's pleadings and proffered evidence make it clear that her unwillingness to work weekends was a substantial factor in the decision. Magnus appears to claim that poor performance is a pretext, and that she was actually fired for arriving late on January 27 and for her inability to work weekends due to LaDonna.

Magnus protested her dismissal in letters to Church authorities and eventually to the Equal Employment Opportunity Commission (the "EEOC").

## II.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence would permit a reasonable fact finder to find for the non-moving party, and material if it

may affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts do not evaluate credibility or determine facts on summary judgment; they decide only whether there is enough evidence to send a case to a jury. *Id.* at 249. If the movant meets its burden, the non-movant must present facts showing a genuine dispute to avoid summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

The Court construes all facts in favor of the non-moving party. *Ricci v. DeStefano*, 129 S.Ct. 2658, 2677 (2009). It may draw inferences from the evidence, but need not draw every conceivable inference. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). A mere scintilla of evidence is insufficient; "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 129 S.Ct. at 2677 (citation omitted).

Because employment discrimination cases turn on issues of intent and credibility, they receive "special scrutiny" on summary judgment. *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 875 (7th Cir. 2002). However, employment discrimination cases are amenable to summary judgment if there is not enough evidence to show the alleged discriminatory motive. *Riley v. Orthogenic School*, No. 99 C 6057, 2001 WL 1345950, at *3 (N.D. Ill. Oct. 30, 2001).

## B.  ADA Association Discrimination

The sole remaining count in this case alleges that the Church discriminated against Magnus based on her affiliation with LaDonna. The Americans with Disabilities Act (the "ADA") prohibits covered employers from "excluding or otherwise denying equal jobs or benefits to a qualified individual because" he or she has a relationship with a disabled person. 42 U.S.C. § 12112(b)(4). *See also* 29 C.F.R. § 1630.8. "Qualified individual" in § 12112(b)(4) does not mean the same thing as in the rest of the statute, where it means a person with a disability. *See Larimer v. Int'l Bus. Mach. Co.*, 370 F.3d 698, 700 (7th Cir. 2004). Instead, it simply means qualified to do one's job and able to meet an employer's expectations. *Id.* at 700, 702.

Section 12112(b)(4) was enacted to stop employers from refusing to hire a qualified person out of fear that she will, for example, miss work to care for a disabled child. *See Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (quoting H.R. Rep. No. 101-485, pt. 2, at 61-62 (1990)). However, the legislative history specifies that firing an employee who violates "a neutral employer policy concerning attendance or tardiness," even to care for a disabled person, does not violate the ADA. *Id.* at 486. That is, there is no obligation to reasonably accommodate a nondisabled employee. *Larimer,* 370 F.3d at 700. *See also* 29 C.F.R. app. pt. 1630 (an employee is not entitled to

modified work schedule to allow them to care for a disabled family member).

There are three types of association discrimination claims: where (1) an employer tries to dodge the expense of treating an employee's disabled associate; (2) an employer fears that its employee has or will catch the disabling condition; and (3) an employee is distracted by the disability. *Dewitt v. Proctor Hosp.*, 517 F.3d 944, 947-48(7th Cir. 2008). Magnus brings a distraction claim, alleging that she was "somewhat inattentive" at work due to LaDonna's disability, "yet not so inattentive that to perform to [her] employer's satisfaction [she] would need an accommodation, perhaps by being allowed to work shorter hours." *Larimer,* 370 F.3d at 700.

Magnus may prove discrimination under the ADA either directly or indirectly.

### 1. *Direct Approach*

Under the "direct" approach, Magnus can present either direct or circumstantial evidence to show that she was discriminated against. See *Dickerson v. Bd. of Tr. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Direct evidence is that which shows discrimination without requiring the fact-finder to draw any inferences. Of course, admissions of discrimination are rare. Most often, plaintiffs must rely on circumstantial evidence of discrimination, including suspicious timing of dismissal,

problematic actions toward other members of the protected group, better treatment of non-protected but similarly situated employees, and pretextual grounds for dismissal. *Id.* (In contrast, under the indirect method, the question of pretext arises only after a plaintiff establishes a *prima facie* case and a defendant has countered with a non-discriminatory reason for dismissal. *Id.*)

## 2. *Indirect Approach*

The indirect method is a modification of the familiar *McDonnell Douglas* burden-shifting approach. *Timmons v. General Motors Corp.* 469 F.3d 1122, 1126 (7th Cir. 2006). Under this approach, Magnus must show that: (1) she was "qualified" for the job when she suffered an adverse employment action (dismissal); (2) she was dismissed; (3) the Church knew that LaDonna was disabled when it fired Magnus; and (4) the circumstances of Magnus' firing raise a reasonable inference her relationship to LaDonna was a determining factor in the decision. *See Larimer,* 370 F.3d at 701. The Seventh Circuit has also described this fourth prong as requiring Magnus to show that her claim falls within one of the association discrimination categories – here, distraction. *Dewitt v. Proctor Hosp.*, 517 F.3d 944, 947-48 (7th Cir. 2008). Using the broad formulation of the fourth *McDonnell Douglas* prong is very similar to offering circumstantial "direct" evidence. *Timmons v. General Motors Corp.*, 469 F.3d 1122, 1126-27 (7th Cir. 2006). Either way, the key question is whether Magnus adduces evidence

that would allow a reasonable jury to find that her firing was based upon discrimination. *Id.*

If Magnus makes that *prima facie* showing, the Church must come forward with evidence to show that it had a legitimate, non-discriminatory reason for firing her. *See Riley,* 2001 WL 1345950, at *4. If it does so, Magnus must offer evidence to show that those reasons are pretextual. *Bodenstab v. County of Cook,* 569 F.3d 651, 656-57 (7th Cir. 2009). Pretext does not just mean that the decision was wrong, but instead that Defendant offered a phony justification. *See Gustovich v. A T & T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) (construing the *McDonnell Douglas* test in the ADEA context). Ordinarily, a plaintiff must refute every reason a defendant gave for her termination. *Wolf v. Buss (Am.) Inc.,* 77 F.3d 914, 920 (7th Cir. 1996) (same).

### III.  **DISCUSSION**

#### A.  Credibility

Both parties bring forth evidence of each other's supposed dishonesty. However, as credibility is not a proper inquiry on summary judgment, the Court declines to consider the impeachment evidence offered by either party.

#### B.  Parameters of the Remaining Claim

Although Magnus makes a variety of allegations about unjust and illegal treatment, a relatively narrow swath is directly relevant to the claim at bar. In light of this case's development

- 9 -

and the convoluted nature of some of the pleadings, the Court will take a moment to clarify what this case is not.

### 1. *Reasonable Accommodation*

Section 12112(b)(4) does not afford Magnus a right to an accommodation or modified work schedule. In reading the record in this case, it is nonetheless difficult to escape the conclusion that the crux of this case remains Magnus' belief that she should not be made to work on weekends when she needs to care for her daughter. Unfortunately, a Court's duty in an ADA case is not to determine whether an employer demands too much from its employees or to make things easier for plaintiffs regardless of the law. *E.E.O.C. v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 950 (7th Cir. 2001). Instead, this Court must determine whether Magnus can show that she was fired for being somewhat distracted at work by LaDonna's disabilities, but not so distracted that she would need an accommodation.

### 2. *Retaliation under the ADA or Title VII*

Nor is this case about retaliation for protected activity. The ADA does prohibit retaliation; however, Magnus did not bring her case under that provision, nor do the facts here seem to fit comfortably within its terms. *See* 42 U.S.C. § 12203(a). Over one year ago, this Court dismissed Magnus' claims that she was fired in retaliation for resisting the new schedule. Nonetheless, Magnus continues to press the retaliation claims in various forms, stating

- 10 -

that she was fired "on the heels of protected activity (barely two weeks after her protest)."

Magnus relies extensively on retaliation cases in her briefing. It is true that an employer may not vindictively prey upon an employee's special vulnerabilities to disguise retaliation as routine conduct. *Cf. Washington v. Ill. Dept. of Revenue*, 420 F.3d 658, 662-63 (7th Cir. 2005). However, the key inquiry in this case is simply whether Magnus was fired for being distracted by LaDonna's disability and coming late to work on January 27, not whether she was retaliated against. *See Leavitt v. SW & B Const. Co., LLC*, 766 F.Supp.2d 263, 285 (D. Me. 2011) (plaintiff cannot "shoehorn a retaliation claim into the limited associational discrimination provision.").

### 3. *Labor Law*

This is also not a case about wage and hour violations. Magnus did allege that she was retaliated against for resisting an illegal work schedule in her Complaint. However, those claims were dismissed with prejudice. Nonetheless, she continues to argue that she was fired in retaliation for being unable to work the "illegal" schedules that the Church proposed. The schedules' terms, as well as their legality, are hotly contested by the parties. In any event, the schedules' legality has little bearing on whether or not Plaintiff can make out a "distraction" claim under the ADA.

- 11 -

## C.  Association Discrimination

Magnus has identified no direct, non-inferential evidence that the Church fired her because of her distraction over LaDonna. However, she identifies the following circumstantial evidence of discrimination:

- Plaintiff was fired one day after coming to work an hour late due to her daughter;

- Defendant was unhappy with her because she was unable to work weekend hours in addition to her weekday schedule;

- The proposed work schedule violated state and federal labor laws; and

- McCoy's deposition testimony and Julian Valentine's e-mails, which show that Magnus was fired because she could not work on the weekends.

As noted above, even showing that the schedules were illegal and that Magnus' resistance to them contributed to her dismissal would not prove association discrimination.  The Court addresses Magnus' pretext claims at greater length below, but finds them lacking.  Magnus' case thus rests largely on the inference of discrimination raised by the fact that she was fired one day after arriving late to work from caring for LaDonna.

As noted, there is only a fine line between using suspicious timing as circumstantial "direct" evidence and as indirect evidence under *McDonnell Douglas*.  *See also Weber v. Univ. Research Ass'n, Inc.*, 621 F.3d 589, 593 n.1 (7th Cir. 2010) (making a similar point in a Title VII case).  Here, the Court opts to discuss timing only

- 12 -

once, below.  As noted there, any inference of discrimination raised by the timing of Magnus' dismissal is insufficient to defeat a motion for summary judgment.

### 1. *McDonnell Douglas Prima Facie Case*

Even assuming that she lacks direct evidence, Magnus contends that she has shown triable issues of fact under the *McDonnell Douglas* framework.  As noted above, no one contests that Magnus was fired or that the Church knew that LaDonna was disabled.  The first and fourth prongs, however, are subject to dispute.

### a. *Qualified Individual*

With regard to the first prong, Magnus points to the following evidence to show that she was qualified:

- She was promoted from a part-time to a full-time receptionist in February of 2008.

- She received "accolades several times from Rev. McCoy[,] Julian Valentine[,] and a host of parishioners" for her "excellent job performance and dedication."

- Only once during her three-year employment did she receive any complaints about her job performance. (Defendant contests this, but on summary judgment this Court accepts the Plaintiff's version.)

- She received a five percent pay increase two weeks before her employment was terminated.

Defendant maintains that the raise was merely a cost-of-living increase which all employees except for new, part-time hires received. Magnus responds only that when she was hired, she was made to believe that raises would be merit-based.  The Court finds

- 13 -

that this assertion is insufficient to rebut Defendant's evidence, and thus that the raise was not merit-based.

Magnus concedes that the November 2008 memorandum identified several problems with her performance. However, she contends that this is the only reprimand she received, and argues that it was unrepresentative of her overall performance because she was working alone (Branker was ill) and LaDonna was very difficult – in effect, that she was distracted then, too. Accepting Magnus' account of her employment as it must on summary judgment, the Court concludes that Magnus has created a triable issue as to whether she was qualified for her job when she was fired. *See Dickerson*, 657 F.3d at 603 (uncorroborated testimony of non-movant can create a genuine issue of fact if based on first-hand experience.)

Defendant argues that individuals are not "qualified" unless they can and will work their assigned shifts. *See, e.g., E.E.O.C. v. Yellow Freight System, Inc.*, 253 F.3d 943 (7th Cir. 2001). Because she would not work the requested schedule, Defendant argues that Magnus could not be qualified. However, the cases that Defendant cites do not speak to whether it had the right to impose the new schedule in the first instance. That question is one of contract, which neither party has genuinely briefed. On the motion as presented, the Court concludes that Magnus has created a triable question of fact as to her qualification.

- 14 -

### b. Circumstances Surrounding Her Dismissal

As noted above, Magnus must rely heavily on the inference of discrimination created by the timing of her dismissal. However, on the record before the Court, that inference is insufficient to defeat summary judgment.

In her *McDonnell Douglas* analysis, Magnus contends that her allegations fit "perfectly" within the Seventh Circuit's description of a "distraction" claim, thus satisfying the fourth prong. She hangs this contention on two factors: first, that she was terminated one day after reporting late to work because of LaDonna; and second, that she was fired after being "threatened with termination for being 'unable' to comply with the draconic schedules of working weekends in addition to regular work week schedule[.]" From this, she concludes that a reasonable jury could return a verdict for the plaintiff.

In response, Defendant offers evidence that the Church decided to fire Magnus around January 25, before her tardy arrival on January 27. However, the e-mails only request a meeting on January 28 to discuss Magnus. The inference that Defendant suggests – that the decision was made, and so her tardiness was irrelevant – may be reasonable. At this stage, however, the Court must draw all reasonable inferences in *favor* of the Plaintiff.

In her briefing, Magnus describes Defendant as "irritated and disgusted" with her late arrival on January 27 (and her rejection

of the schedule change), but cites no evidence to support that characterization. Indeed, the record undisputedly reflects that she was not punished for arriving late and that McCoy approved her request to make up the time the next day. Indeed, the uncontroverted evidence in this case indicates that Magnus was never reprimanded or disciplined for taking time needed to care for LaDonna (again, aside from the Church's desire to have her work on some weekends).

Thus, again, Magnus may have created a triable issue as to whether her dismissal resulted from a rejection of the schedule change. As this Court observed more than a year ago, however, even though Magnus' decision to reject the schedule related to her obligations to LaDonna, it is not protected by the ADA. Again, Magnus must rely on an inference of discrimination from the timing of her dismissal to satisfy the fourth prong of *McDonnell Douglas*.

"[S]uspicious timing alone is almost never enough" to defeat summary judgment, and those cases "where a weak inference regarding suspicious timing alone is enough to create a triable issue" are "rare." *Reynolds v. Champaign Urbana Mass Transit Dist.*, 378 Fed.Appx. 579, 582 (7th Cir. 2010) (discussing retaliation). In light of the substantial and undisputed evidence that Magnus had faced no backlash when she took time to care for LaDonna, and her own testimony that she received permission to make up the extra

hour the following day, the Court finds that this is not one of those rare cases.

### c. Pretext

Regardless of whether pretext is analyzed as "direct" evidence of discrimination or in rebuttal to the Church's proffered non-discriminatory reasons for firing Magnus, the Court finds that Magnus' evidence is insufficient to defeat summary judgment. If the Church made a good-faith choice to fire Magnus for non-discriminatory reasons, the Court will not interfere. *See McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 799(7th Cir. 1997). Defendant offers evidence that it terminated Magnus for nondiscriminatory reasons: poor performance and her unwillingness to alter her schedule. Under the *McDonnell Douglas* framework, Plaintiff must refute each ground by offering evidence that it is a mere pretext. *See, e.g., Clay v. Holy Cross Hosp.,* 253 F.3d 1000, 1007 (7th Cir. 2001) (pregnancy discrimination). Under either *McDonnell Douglas* or the "direct evidence" approach, the Court finds that the pretext evidence proffered here is insufficient to protect Magnus from summary judgment.

Magnus must show that the reasons given were a pretext for discrimination, not just that they were a pretext for another nondiscriminatory reason for termination. *See, e.g., St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 516 (1993). Thus, even though Magnus' evidence indicates that Defendant was not forthright about

- 17 -

the role Magnus' schedule inflexibility played in her firing, its actions were not unlawful pretext unless her resistance is protected by the ADA. As discussed above, it is not.

Even though Magnus contends that the November 2008 warning memo was unfairly critical in light of the circumstances, the relevant inquiry is whether an employer's evaluation was honest, not whether it was objectively correct. Courts are not a "super-personnel department that re-examines an entity's business decisions." *Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 919-20 (7th Cir. 1996) (noting this point in an ADEA case). While Magnus' statements about her merits as an employee may create a triable question as to whether she was "qualified," they do not raise a triable issue as to the honesty of the Church's evaluations. *Gustovich v. AT & T Commc'ns, Inc.,* 972 F.2d 845, 848 (7th Cir. 1992) (in an ADEA case, noting that such statements "do nothing . . . to establish that the proffered reason is a pretext for discrimination.").

Finally, Defendant notes that pretext seems particularly unlikely here, in that the same group which fired Magnus in 2009 hired her for the full-time position in 2008. If the Committee was inclined to discriminate, Defendant claims, it would not have promoted her in 2008 when the Church had known about LaDonna since 2006. While the Seventh Circuit has indicated that in some cases such an inference may be appropriate, *see Martino v. MCI Commc'ns*

- 18 -

*Servs., Inc.*, 574 F.3d 447, 454-55 (7th Cir. 2009), all inferences at this stage are drawn in favor of Plaintiff.  In any event, such an inference is unnecessary, as this Court has concluded that no reasonable jury could find for Plaintiff that her termination for poor performance was a pretext for discrimination against her by reason of her association with her daughter.

### IV.  CONCLUSION

The Court is sympathetic to the position in which Plaintiff found herself.  Her legitimate need to be home with her daughter conflicted with the Church's need to have both members of their full-time staff available to work some weekend hours. However, that does not mean that the Church's decision to dismiss the Plaintiff violated the ADA.

For the reasons stated herein, summary judgment is hereby GRANTED to the Defendant on the sole remaining count of the Complaint.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 11/10/2011

- 19 -